DECISION
The case is before the Court on Petitioner Fernelys Brea's application for post conviction relief.
On May 20, 2008, Fernelys Brea was charged with a single count of receiving stolen goods, valued at over $500.00, in violation of R.I.G.L. 1956 §§ 11-41-2 and 11-41-5. At that time, the United States Immigration and Nationality Act (INA) classified receiving stolen goods as an aggravated felony. 8 U.S.C. § 1101(a)(43)(G). Any non-citizen convicted of receiving stolen goods and sentenced to one year imprisonment or more was subject to automatic deportation upon release from imprisonment. 8 U.S.C. § 1227(a)(2)(A). Because Brea was not a United States citizen, he was at risk for deportation as a result of the charge brought against him.
On December 1, 2008, Brea pled guilty to the crime, as charged, in exchange for an agreed upon 5-year suspended sentence and 5 years probation. Thereafter, deportation proceedings were commenced against him by the United States Attorney General.
On July 29, 2010, Brea petitioned this Court for Post Conviction Relief pursuant to R.I.G.L. 1956 § 10-9.1-1. As grounds, Brea claimed he had been deprived hisUnited States Constitution Sixth Amendment right to effective assistance of counsel, more specifically that his criminal defense attorney had failed to advise him that his guilty plea *Page 2 
would subject him to automatic deportation. SeeU.S. CONST. amend VI; Padilla v. Kentucky,130 S.Ct. 1473, 176 L.Ed.2d 284 (2010).
This Court held an evidentiary hearing on September 23, 2010. Brea testified in his own behalf. Also testifying was his former criminal defense attorney, Attorney Michael J. Feeney. After the evidentiary hearing, both the State of Rhode Island and Brea filed memorandum of law.
There is no dispute that Brea was informed by both his attorney and the magistrate who accepted his guilty plea that Brea might suffer adverse immigration consequences as a result of his plea. However, it is also undisputed that neither informed Brea he would be subject to automatic deportation if he pled guilty to the agreed upon sentence.
Based upon the uncontroverted facts, it is evident that Brea was denied effective assistance of counsel and his Sixth Amendment right to counsel was violated. Under the circumstances of this case, Brea's attorney unquestionably had an affirmative duty to advise Brea of the immigration consequences of his plea. Padilla,130 S.Ct. at 1482 (finding the weight of prevailing norms supports the view that counsel must advise her client regarding the risk of deportation). The attorney's failure to do so rendered his representation deficient and, accordingly, the first prong of aStrickland analysis is satisfied. See Strickland v.Washington, 466 U.S. 668, 688 (1984) (holding a court must first determine whether defense counsel's representation falls below an objective standard of reasonableness); see alsoPadilla, 130 S.Ct. at 1483 (asserting when deportation consequences are "truly clear," the duty to give correct advice is equally clear and must be communicated to avoid deprivation of constitutional rights). *Page 3 
The remaining question is whether Brea was prejudiced by his attorney's lapse. If Brea can demonstrate that he indeed was prejudiced, he is entitled to relief and his sentence must be vacated. Padilla, 130 S.Ct. at 1487; Strickland,466 U.S. at 694; Boakye v. United States, No. 09 Civ. 8217, 2010 WL 1645055, at *3 (S.D.N.Y. Apr. 22, 2010).
It is in the context of the second prong of a Strickland
analysis that this Court considers the magistrate's warning given to Brea at the time of the plea. See Strickland,466 U.S. at 687 (deciding that after a court determines defense counsel's performance was deficient, the court must then determine whether deficient performance prejudiced the defendant). Under certain circumstances, a judge or a magistrate's warning concerning the consequences of the plea may cure counsel's failure or erase any consequent prejudice. People v. Garcia,2010 WL 3359548, at *6 (N.Y. Sup. Ct. Aug. 26, 2010). InGarcia, the New York Supreme Court determined that when the court's instruction is sufficiently clear so as to put the defendant on notice that he indeed will be deported if he pleads guilty, notions of "cure" may apply. Id.
In the instant case, the magistrate's warning plainly was not sufficient to cure or erase defense counsel's deficient representation. The magistrate's colloquy with Brea reveals that the magistrate gave Brea a standard warning indicating that there might be immigration consequences associated with Brea's decision to plead guilty, including deportation, but that he did not inform Brea that deportation was a certainty. Substantively, the magistrate's warning approximated what Brea had been told by his attorney and, therefore, the magistrate's warning was not sufficient to have preclusive effect on the question of prejudice. Garcia,2010 WL 3359548, at *6 (holding the Court's *Page 4 
general warning did not automatically erase the consequent prejudice when the defendant was misled by a legal professional and did not receive advice from his attorney). However, the fact of magistrate's warning is nonetheless relevant to the question of prejudice.
In the context of the Sixth Amendment, the concept of prejudice requires a petitioner to demonstrate not only "apossibility of prejudice, but that [it] worked to his actual and substantial disadvantage." See United States v.Frady,456 U.S. 152, 170, 102 S.Ct. 1584, 1596 (1982) (emphasis in original). In this particular subset of post conviction relief and ineffective assistance of counsel claims, the concept of prejudice also ". . . requires a petitioner to demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."Strickland, 466 U.S. at 694. In particular, a petitioner must show that he would have insisted on going to trial if he had been informed of the consequences of his plea. Boakye,2010 WL 1645055, at *5. Accordingly, Brea was required to prove that there was a reasonable probability he would have rejected the plea offer and would have insisted on going to trial. Id. Brea also was required to prove there was a reasonable probability the criminal proceedings against him would have finally resulted in a different outcome, more specifically either in an acquittal or a conviction coupled with a non-deportable sentence of less than one year. See State v. Figueroa,639 A.2d 495, 500 (R.I. 1994).
According to his testimony, Brea did not think the immigration consequences, as pointed out to him by both his attorney and the magistrate, presented an appreciable risk. In other words, although he understood the enormity of the consequences, Brea did not *Page 5 
appreciate their inevitability. According to his testimony, if Brea had understood deportation was guaranteed he would not have pled guilty. Brea testified that had been in the United States since childhood and did not want to leave. He testified that would have attempted to negotiate a disposition that did not carry immigration consequences and, failing that, would have gone to trial in the hope of achieving a not guilty verdict or a guilty verdict coupled with a non-deportable sentence. By his testimony he also indicated that had he been aware of the combined effects of 8 U.S.C. § 1101(a)(43)(G) and 8 U.S.C. § 1227(a)(2)(A) he would have accepted a jail term of less than one year, but not more, had such been offered by the State.
Brea further testified that although his criminal defense attorney warned him of the potential consequences, the attorney suggested that the risk was de minimus. According to Brea, his attorney mentioned potential deportation but stated "don't worry about it" or words to that effect. This fact finder rejected that testimony, finding it unlikely that Attorney Feeney so dismissed the potential immigration consequences.
Attorney Feeney testified. He was a credible witness and did not appear to be one to dismiss any risk as negligible without having the facts and information to support such an opinion. He testified that he knew he was no immigration expert and intentionally limited his discussion to the fact that deportation was a risk, as opposed to providing an analysis of the degree of risk. This fact finder did not believe that Feeney told Brea "not to worry about it" when referring to the potential immigration consequences of his plea.
More important is that Brea plainly understood from his communications with his attorney and his colloquy with magistrate that he was at risk for deportation, even if he mistakenly believed that risk was negligible. The question therefore is whether Brea has *Page 6 
demonstrated he would have insisted on going to trial, thereby risking both deportation and a substantial, preceding term in custody. See Pena v. United States, No. 01 Civ. 11395, 2003 WL 22387127, at *4 (S.D. N.Y. Oct. 20, 2003) (citing 8 U.S.C. § 1231(a)(4) and holding ". . .the general rule is that the Attorney General may not remove an alien before that alien has completed a sentence of imprisonment.")
As fact finder, this Court accepted Brea's testimony that had he known of the INA's deportation requirements he would have pled guilty to incarceration and to a non-deportable sentence of less than one year imprisonment — assuming the State had been inclined to offer this to him. However, the Court did not infer from this that Brea would have risked a longer term in custody followed by guaranteed deportation.
Plainly, avoiding imprisonment was high on the list of Brea's priorities. Brea obviously was willing to accept a substantial, five year suspended sentence and at least some risk of deportation if that meant avoiding incarceration. Given his personal circumstances including his personal and familial connections to the United States, his willingness to accept even a minimal risk of deportation was strong evidence of the force of his desire to avoid incarceration. Furthermore, it is consistent with Attorney Feeney's testimony that one of his client's objectives was to avoid jail time, that doing so was of high priority, and that Brea was willing to accept a lengthy suspended sentence rather than spend a moment in jail.
In addition, Brea was facing a strong case against him. Brea was caught red handed with stolen property. Included among the items stolen was property taken during a home invasion occurring after the perpetrators kicked in the door of the complaining witness' residence. Brea was nabbed by police along with two other individuals and a *Page 7 
cache of stolen property, some of which was seized from Brea personally. Upon being arrested, Brea waived hisFifth Amendment privilege against self-incrimination and gave the police a recorded statement in which he admitted being in possession of the goods. See generally U.S. CONST. amend V;Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602 (1966).
As fact finder, the Court was not persuaded that Brea would have abandoned the benefits of a guilty plea, would have risked facing such strong evidence at trial, and would have risked leaving his sentence to the discretion of the trial justice. Under the R.I. Superior Court Sentencing Benchmarks, trial justices are encouraged to consider the fact that a defendant has pled guilty when applying the Benchmarks and the Benchmarks contemplate the use of some lenience to promote guilty pleas. R.I. SuperCtSent Benchmark 3. Just as importantly, the Court would have to engage in sheer speculation in order to guess at what sentence might have been imposed after the details of Brea's criminal activities emerged during trial.
The Court finds that avoiding incarceration was of great importance to Mr. Brea and that he indeed factored deportation into the calculus of plea negotiations and sentencing, notwithstanding his mistaken belief as to the degree of risk actually presented. Mr. Brea has failed to persuade the Court that he would have insisted on going to trial had he been informed deportation was a certainty and, instead, would have risked deportation and a preceding term in custody on the chance that he might avoid both. The Court is not persuaded that Mr. Brea would have gone to trial and passed up the opportunity to avoid a term in custody, if not deportation. Mr. Brea therefore has failed to demonstrate that his defense was substantially disadvantaged by his attorney's failure *Page 8 
to give him proper information and that but for that error, the result of the proceeding would have been different.Strickland, 466 U.S. at 694.
Furthermore, the evidence in the case was overwhelming and Mr. Brea therefore has failed to persuade the Court that there existed a reasonable probability he would have been acquitted or that he would have received less than a one-year sentence once the details of his and his cohorts activities were developed at trial. Therefore, Mr. Brea has failed to meet the burden imposed upon him by law and to demonstrate that the final outcome of the proceedings would have resulted in something other than his deportation. See Padilla, 130 S.Ct. at 1487;Strickland, 466 U.S. at 694; Figueroa, 639 A.2d at 500.
The petition for post conviction relief is denied.